## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| HMV Indy I, LLC, a Delaware limited liability company,<br><br>          Plaintiff,<br><br>     v.<br><br>HSB Specialty Insurance Company, a Connecticut company,<br><br>          Defendant. | Case No.:  1:19-cv-1148<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

For its complaint against Defendant HSB Specialty Insurance Company ("HSB"), Plaintiff HMV Indy I, LLC ("HMV Indy I") states and alleges as follows:

## INTRODUCTION

1.     With this action, HMV Indy I seeks unpaid insurance benefits due and owning under HSB Specialty Insurance Policy No. NHX5212203 (the "Policy").  The Policy provides "Property All Risk Coverage," including, *inter alia*, property damage and business income loss covering three large roof-top solar energy generation projects constructed, owned and operated by HMV Indy I and located in Indianapolis, Indiana.  On April 24, 2017, electrical connectors on one of the three projects catastrophically failed resulting in a fire that severely damaged that project and the roof of the building on which it was constructed.  Immediate inspection disclosed both the cause of the fire and that identical electrical connectors on all three projects were arcing, burning and melting causing all three projects to be shut down to avoid the substantial and

imminent risk of additional fires until appropriate repairs were made.  As an additional named insured, HMV Indy I sought coverage under the Policy for its property damage, business income and other covered damages.  HSB however has refused to pay HMV Indy I more than $1,400,000 in amounts due under the Policy.  HMV Indy I seeks to recover those sums with this action as a consequence of HSB's breach of the Policy.  HMV Indy I also seeks declaratory relief and recovery for damages resulting from HSB's bad faith denial of insurance benefits, including but not limited to recovery of consequential damages, attorneys' fees, prejudgment interest, and exemplary, statutory, and/or punitive damages.

## PARTIES

2. Plaintiff HMV Indy I is a Delaware limited liability company.  Its principal place of business is located in Chicago, Illinois.  The sole member of HMV Indy I is CWP USA, Inc. ("CWP USA").  CWP USA is a Delaware corporation with its principal place of business located in Seattle, Washington.  HMV Indy I is a citizen of the states of Delaware, Illinois and Washington.

3. HSB is a Connecticut insurance company that appears to be registered with the Indiana Department of Insurance.   HSB's principal place of business is located at One State Street, Hartford Connecticut.  HSB is a citizen of the state of Connecticut.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1332(a)(1), because HMV Indy I and HSB are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.   This Court has personal jurisdiction over HSB because it regularly, continuously and systematically transacts business in the State of Indiana and because it has insured property in the State of Indiana.

6.   This Court has jurisdiction over HMV Indy I's claim for a declaratory judgment under 28 U.S.C. § 2201 and IC § 34-14-1-1 *et seq*.

7.   Venue is proper in this district under 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

8.   HMV Indy I owns and operates three large solar energy generation projects located in Indianapolis, Indiana (the "Projects"). The Projects were built on the roofs of three, commercial buildings owned by Duke Realty Limited Partnership ("Duke Realty") and located at 8258 Zionsville Road, Indianapolis, Indiana ("Building 98"), 53555 West 76th Street, Indianapolis, Indiana ("Building 87") and 4945 West 86th Street, Indianapolis, Indiana ("Building 129"). HMV Indy I leases space for the Projects on the roofs of Building 98, Building 87 and Building 129 pursuant to Solar Power Rooftop Lease Agreements dated February 26, 2014, between HMV Indy I and Duke Realty, for each of the buildings.

9.   The three Projects were constructed simultaneously in 2014 and pursuant to one Construction Services Agreement between HMV Indy I as owner and Inovateus Solar, LLC ("Inovateus") as general contractor. The Projects are all of the same type, design, material, manufacture and construction.

10.   CWP USA, HMV Indy I's sole member, and others are the named insureds under the Policy. The Policy provides "Property All Risk Coverage" for nearly two-dozen solar energy generation projects located in at least eight states. Building 98, Building 87 and Building 129 are specifically identified covered locations under the Policy. HMV Indy I is an additional named

insured under the Policy. Pursuant to the Policy, coverage for Building 98, Building 87 and Building 129 commenced on July 2, 2016 and would expire on July 2, 2017. The $86,262.00 premium for the Policy was fully paid.

11. Pursuant to its terms, the Policy provides coverage for, *inter alia*, property damage, equipment breakdown, business income loss, serial losses, extra expense incurred, debris removal and professional fees.

12. On April 24, 2017 a large fire broke out on the roof of Building 98. The fire destroyed a large portion of the roof of Building 98 along with hundreds of solar panels and attendant wiring, cable trays, combiner boxes and racking. All of the solar energy production arrays on the building were immediately shut down as a consequence of the fire. Pictures of the damage from the fire follow.





13. After the fire, multiple engineers were engaged by HMV Indy I, HSB, Duke Realty and various other insurer interests to inspect the damage and identify the cause of the fire. Those experts concluded that the fire originated in electrical cabling connections that connected dozens of solar panel strings to a combiner box that brings the direct current energy output of the solar panels together and feeds it to inverters that convert that energy to alternating current.

14. There are at least two-dozen combiner boxes on each of the three Projects. The conclusion that the Building 98 fire originated in a failure of the electrical connectors to a combiner box caused HMV Indy I to have all of the combiner box electrical connections inspected on not only Building 98, but also on Building 87 and Building 129. That inspection disclosed that many of the combiner box connections on all three of the buildings were in various stages of arcing, melting and burning creating an imminent risk of additional combiner box connection fires. A picture of arcing, melting and burning connectors found on Building 129 follows:

5



15.     The discovery of the arcing, melting, burning and otherwise failing connectors on all three buildings and the attendant imminent risk of fire and catastrophic loss caused HMV Indy I to completely shut down all three of the Projects.

16.     Repairs to fire-damaged Building 98 commenced immediately after the fire. The repair of the roof itself required the removal of hundreds of solar panels and attendant wiring, cable trays, combiner boxes and racking in addition to the equipment that was destroyed by the fire. Once the solar energy generating equipment was removed and during the months of June,

July and August 2017, the roof of Building 98 was repaired. HMV Indy I then began the process of replacing the equipment that had been removed as a consequence of the fire and installing new equipment to replace that which was destroyed by the fire.

17. During this same time period, HMV Indy I engaged contractors to completely replace all of the electrical connections from the solar panel strings to the combiner boxes on all three of the Projects.

18. The connector replacement projects on Building 87 and Building 129 were completed and the two buildings were brought back into production on September 27, 2017.

19. The repairs to Building 98 were completed and energy production on Building 98 recommenced on December 14, 2017.

20. On April 26, 2017, the day after the fire on Building 98, HMV Indy I notified HSB of the fire and tendered its claim for coverage for its losses under the Policy. HSB immediately engaged forensic engineers from EFI Global who conducted an inspection of the site of the fire and the attendant losses.

21. HMV Indy I heard nothing further from HSB until June 29, 2017 when HSB provided HMV Indy I with HSB's correspondence dated June 27, 2017. Therein, HSB acknowledged the tender of HMV Indy I's claim and acknowledged that a "Covered Cause of Loss has occurred to the solar array at building 98." HSB stated that its investigation had disclosed that the fire was caused by electrical arcing and burning at the connections between the solar panel strings and a specific combiner box on Building 98. HSB acknowledged that the Policy "will afford coverage" for the damage to HMV Indy I's covered property and associated business income loss during the "Period of Restoration." HSB asked HMV Indy I to provide further information including the costs of the necessary repairs and HMV Indy I's lost "Business

Income" claim.  HMV Indy I has fully cooperated with HSB and has provided all available information requested in a timely fashion.

22. HMV Indy I engaged BDO USA, LLP ("BDO") to calculate the amount of HMV Indy I's property damage, business income loss, extra expense and professional fees claim under the Policy.  Using the same information provided by HMV Indy I to HSB, BDO prepared an analysis of HMV Indy I's property damage, business interruption losses and professional fee expenditures as a consequence of the Building 98 fire as of May 23, 2018 (the "BDO Analysis").  BDO's analysis was provided to HSB under cover of a June 19, 2018 letter to HSB from HMV Indy I's legal counsel (the "6/19/2018 Letter").  A true and correct copy of the 6/19/2018 Letter with the attached BDO Analysis is attached hereto and incorporated herein as **Exhibit 1**.

23. The BDO Analysis identifies property damage losses, business interruption losses and professional fee costs incurred by HMV Indy I totaling $2,116,861.  The property damage losses and professional fee costs identified by BDO are reasonable amounts actually incurred and paid for by HMV Indy I.  With the 6/19/2018 Letter, HMV Indy I demanded that HSB promptly pay to HMV Indy I the amount identified by BDO as required by the Policy.  HMV Indy I further advised HSB that the BDO Analysis did not include any costs incurred by Duke Realty to repair the roof of Building 98 but that HMV Indy I demanded coverage for any such costs should they be tendered by Duke Realty (or its insurer) to HMV Indy I.

24. In bad faith and with ill will, knowingly and without reasonable justification, HSB handled the claim in bad faith and has failed and refused to pay more than $1,400,000 of the $2,116,861 in covered losses identified by BDO.

25. In bad faith and with ill will, knowingly and without reasonable justification, HSB has refused to pay for the repairs to the roof of Building 98 in the event that those amounts are tendered to HMV Indy I for payment.

26. In bad faith and with ill will, knowingly and without reasonable justification, HSB has failed and refused to pay an arbitrarily identified portion of HMV Indy I's property damage claim that HSB says is related to amounts incurred and paid by HMV Indy I for the removal and replacement of portions of the solar arrays on Building 98 that needed to be removed to facilitate the repair of the roof of the building.

27. In bad faith and with ill will, knowingly and without reasonable justification, HSB has failed and refused to pay an arbitrarily identified portion of HMV Indy I's business interruption losses that HSB says is related to the time it took Duke Realty to repair the roof of Building 98.

28. In bad faith and with ill will, knowingly and without reasonable justification, HSB has failed and refused to pay an arbitrarily identified portion of HMV Indy I's business interruption losses for Building 98 claiming that HMV Indy I took too long to perform repairs to the solar arrays on Building 98.

29. In bad faith and with ill will, knowingly and without reasonable justification, HSB has failed and refused to pay an arbitrarily identified portion of HMV Indy I's business interruption losses suffered as a consequence of the fact that all of the solar arrays on Building 98 were shut down while repairs to the roof and the fire-damaged solar arrays were being performed.

30. In bad faith and with ill will, knowingly and without reasonable justification, HSB has failed and refused to pay business interruption losses suffered by HMV Indy I on Building 87, Building 129 and the portion of Building 98 that was not damaged by the fire.

31. In bad faith and with ill will, knowingly and without reasonable justification HSB has failed and refused to pay for the removal and replacement of the undamaged solar arrays and attendant equipment on Building 98 (and the attendant business interruption losses) that were necessarily removed to facilitate the repairs to the roof of Building 98 as "Extra Expense" or otherwise under the Policy.

32. The Policy provides coverage for what the Policy identifies as "Serial Losses." Section E9 of the Policy states:

> **Serial Losses**
>
> **a.** This provision applies if:
>   (1) The Covered Cause of Loss results from a defect in design, material, manufacture, or construction; and
>   (2) You have other "covered property" of the same type, design, material, manufacture, or construction.
> **b.** When this provision applies:
>   (1) You agree promptly to examine such other "covered property" to determine if the same defect is present, inform us of the finding, and repair and, as far as practicable, eliminate the defect or replace defective parts;
>   (2) We will not pay for your expenses to comply with (1) above.
>   (3) As respects any other loss, damage or expense resulting from the same defect, we will not pay the full amount of the loss. Instead, our payment after applying the applicable deductible, will be calculated according to the following scale:
>     80% of the second loss;
>     60% of the third loss;
>     40% of the fourth loss;
>     20% of the fifth loss;
>     0% of any subsequent losses.

33. The fire on Building 98 was caused by "a defect in design, material, manufacture, or construction" of the electrical connections from the solar panel strings to the combiner boxes on Building 98.

34. The electrical connections from the solar panel strings to the combiner boxes on the whole of Building 98, the whole of Building 87 and the whole of Building 129 are of the same type, design, material, manufacture and construction.

35. The portions of Building 98 that were undamaged by the fire, the whole of Building 87 and the whole of Building 129 are "other 'covered property'" under the Policy.

36. After the fire, HMV Indy I immediately examined all of the connections from the solar panel strings to the combiner boxes on the whole of Building 98, the whole of Building 87 and the whole of Building 129.

37. As noted *supra*, HMV Indy I determined that the same defect that caused the fire on Building 98 was present throughout the whole of the connections from the solar panel strings to the combiner boxes on the remainder of Building 98 and the whole of both Building 87 and Building 129.

38. As noted *supra,* the discovery of the arcing, melting, burning and otherwise failing connectors throughout the whole of the connections from the solar panel strings to the combiner boxes on the remainder of Building 98 and the whole of both Building 87 and Building 129 and the attendant imminent risk of fire and catastrophic loss caused HMV Indy I to completely shut down all three of the Projects.

39. HMV Indy I immediately informed HSB of its findings and HMV Indy I immediately proceeded to eliminate the defect by replacing all of the connections from the solar

panel strings to all of the combiner boxes on the remainder of Building 98 and the whole of Building 87 and Building 129.

40. HMV Indy I incurred losses, damage and expenses, including, without limitation, business interruption loss, extra expense and professional fees as a consequence of its effort to eliminate the defect and replace the defective parts on the remainder of Building 98 and the whole of Building 87 and Building 129.

41. HMV Indy I demanded that HSB cover these "Serial Losses" as required by the Policy.

42. In bad faith and with ill will, knowingly and without reasonable justification HSB has failed and refused to pay HMV Indy I for these "Serial Losses" as required by the Policy.

## CAUSES OF ACTION

## BREACH OF CONTRACT

43. HMV Indy I realleges and incorporates the allegations set forth in the paragraphs above as if fully pled here.

44. The Policy is a valid and enforceable contract.

45. The obligations of HMV Indy I under the Policy have been fulfilled.

46. HSB has breached, repudiated, or failed to fulfill its duties under the Policy by failing and refusing to pay HMV Indy I the amounts demanded under the Policy as identified herein.

47. As a direct and proximate result of HSB's breaches of contract, HMV Indy I is entitled to recover from HSB amounts to be determined at the trial of this matter in excess of $1,400,000.

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

48. HMV Indy I realleges and incorporates the allegations set forth in the paragraphs above as if fully pled here.

49. HSB is subject to a legal duty to deal with its insured, HMV Indy I, in good faith.

50. HSB has handled HMV Indy I's claim and it has denied coverage under the Policy for HMV Indy I's claim in bad faith and with ill will, knowingly and without reasonable justification.

51. In bad faith and with ill will, knowingly and without reasonable justification, HSB has arbitrarily failed and refused to pay insurance benefits due and owing to HMV Indy I under the Policy as identified herein, all in breach of HSB's legal duty of good faith and fair dealing.

52. In bad faith and with ill will, knowingly and without reasonable justification, HSB has arbitrarily failed and refused to pay insurance benefits due and owing to HMV Indy I under the Policy as identified herein and has accordingly compelled HMV Indy I to institute litigation to recover amounts due under the Policy in breach of HSB's legal duties under the Indiana Unfair Claims Settlement Practices Act.

53. In bad faith and with ill will, knowingly and without reasonable justification, HSB took more than 17 months from the date of the covered loss to pay HMV Indy I amounts that HSB conceded it owed to HMV Indy I under the Policy in breach of HSB's legal duties under the Indiana Unfair Claims Settlement Practices Act.

54. HMV Indy I has been harmed and has suffered damages in excess of $1,400,000 as a result of HSB's breaches of its legal duty of good faith and fair dealing.

55. As a direct and proximate result of HSB's breaches of its duty of good faith and fair dealing, HMV Indy I is entitled to recover from HSB amounts to be determined at the trial of this matter in excess of $1,400,000 and its costs and reasonable attorneys' fees.

56. HSB's breach of its duty of good faith and fair dealing, and willful, intentional wrongdoing warrants an award of punitive damages against it. HSB's bad faith failures in handling the claim and stubborn refusals to pay insurance benefits due and owing to HMV Indy I under the policy was done with ill will, malice, fraud, gross negligence or oppressiveness which was not the result of mistake of fact or law, honest error or judgment, overzealousness, mere negligence or other human failing.

## CLAIM FOR DECLARATORY RELIEF

57. HMV Indy I realleges and incorporates the allegations set forth in the paragraphs above as if fully pled here.

58. HSB has failed and refused to pay amounts due and owing to HMV Indy I under the Policy, and it has breached the parties' contract all as identified herein.

59. HSB denies that it has breached the parties' contract and it denies that it has failed and refused to pay amounts due and owing to HMV Indy I under the Policy.

60. An actual and justiciable controversy exists between HMV Indy I and HSB regarding HSB's obligations under the Policy.

61. HMV Indy I is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 and IC § 34-14-1-1 *et seq*. resolving the parties' dispute and declaring the parties' rights and responsibilities with respect to the Policy and all of the issues raised herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HSB Indy I, LLC respectfully requests judgment against Defendant HSB Specialty Insurance Company as follows:

1. Awarding judgment in favor of HMV Indy I and against HSB for breach of contract in an amount to be determined at trial, but in excess of $1,400,000;

2. Awarding a declaratory judgment in favor of HMV Indy I and against HSB declaring the parties' rights and responsibilities under the Policy;

3. Awarding judgment in favor of HMV Indy I and against HSB for breach of the duty of good faith and fair dealing in an amount to be determined at trial, but in excess of $1,400,000, plus HMV Indy I's costs, other consequential damages, and reasonable attorneys' fees;

4. Awarding judgment in favor of HMV Indy I and against HSB for all damages allowed by law, including exemplary and punitive damages to the maximum extent allowed by law;

5. Awarding judgment in favor of HMV Indy I and against HSB for all attorneys' fees, costs, and expenses incurred by HMV Indy I in connection with this matter;

6. Awarding judgment in favor of HMV Indy I and against HSB for all interest on the above-described amounts as allowed by law; and

7. For such other and further relief as the Court deems just, appropriate, necessary or proper.

Dated: March 21, 2019

                                            Respectfully submitted,

                                            *s/ Brent W. Huber*
                                            Brent W. Huber, Atty No. 16077-53
                                            ICE MILLER LLP
                                            One American Square
                                            Suite 2900
                                            Indianapolis, IN  46282-0200
                                            brent.huber@icemiller.com

                                            *s/ Christopher R. Grote*               .
                                            Christopher R. Grote, MN Atty No. 267995
                                                 *(pro hac vice request forthcoming)*
                                            Kathryn E. Wendt, MN Atty No. 0397737
                                                 *(pro hac vice request forthcoming)*
                                            BALLARD SPAHR LLP
                                            2000 IDS Center
                                            80 South 8th Street
                                            Minneapolis, MN 55402-2119
                                            grotec@ballardspahr.com

                                            Attorneys for Plaintiff, HMV Indy I, LLC

## JURY DEMAND

Plaintiff, HMV Indy I, LLC demands a trial by jury on all issues in the foregoing Complaint so triable.

                                            Respectfully submitted,

                                            s/ *Brent W. Huber*
                                            Brent W. Huber