UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HMV INDY I, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:19-cv-01148-JMS-TAB ) |
| HSB SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) ) |

**ORDER**

Plaintiff HMV Indy I, LLC ("HMV Indy I") owns and operates three large solar energy generation projects in Indianapolis, Indiana (the "Projects"). The Projects were built on the roofs of three commercial buildings owned by Duke Realty Limited Partnership ("Duke Realty")[1] and located at 8258 Zionsville Road, Indianapolis, Indiana ("Building 98"), 53555 West 76th Street, Indianapolis, Indiana ("Building 87"), and 4945 West 86th Street, Indianapolis, Indiana ("Building 129"). HMV Indy I is insured by HSB Specialty Insurance Company ("HSB") under HSB Specialty Insurance Policy No. NHX5212203 (the "Policy"). On April 24, 2017, a large fire broke out on the roof of Building 98 and caused significant damage and losses. HMV Indy I initiated this litigation against HSB to collect unpaid insurance benefits under the Policy for property damage, business income, and other covered damages. HMV Indy I also alleges that HSB denied insurance benefits in bad faith. HSB has filed a Motion to Dismiss HMV Indy I's claim for Breach of the Duty of Good Faith and Fair Dealing and an accompanying Memorandum of Law in Support

---

[1] HMV Indy I leased the space on the roofs from Duke Realty.

of that motion (collectively "Motion to Dismiss"), [Filing No. 26; Filing No. 27], which is now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chi.*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations in the Amended Complaint—the operative complaint in this case—which the Court must accept as true at this time:

On April 24, 2017, a fire broke out on the roof of Building 98 that was caused by "arcing, burning and melting" of electrical connectors. [Filing No. 18 at 1-2.] The fire destroyed a large

portion of that roof and several solar panels and accompanying wiring, cable trays, and combiner boxes on the roof. [Filing No. 18 at 4.] On April 26, 2017, HMV Indy I notified HSB of the fire and submitted a claim for losses under the Policy. [Filing No. 18 at 7.] In all, the fire caused $989,837 in property damages to HMV Indy I at Building 98. [Filing No. 18-2 at 13.] Repairs to Building 98 were completed and energy production from the Project on the Building 98 roof recommenced on December 14, 2017. [Filing No. 18 at 7.]

Along with the property damage repairs at Building 98, HMV Indy I conducted inspections of its other projects at Buildings 87 and 129. [Filing No. 18 at 5.] These inspections revealed arcing, burning, and melting like that which caused the Building 98 fire. This discovery prompted HMV Indy I to immediately shut down Projects 87 and 129 as well. [Filing No. 18 at 6.] The defects at Buildings 87 and 129 caused an additional $95,408 in property damages to HMV Indy I, raising the total property damages to $1,085,245. [Filing No. 18-2 at 13.] The repairs on Buildings 87 and 129 were completed, and project operations resumed at those locations on September 27, 2017. [Filing No. 18 at 18.] In addition to the property damages, HMV Indy I also suffered $983,386 in losses stemming from business interruption while all three Projects were temporarily shut down for the repairs. [Filing No. 18-2 at 6.]

Under the Policy, all three buildings are "covered property," and the fire was a "covered cause of loss." [Filing No. 18-2 at 10-11; Filing No. 18-2 at 23.] Furthermore, the Policy provides for coverage of "Serial Losses" as defined in Section E9:

**Serial Losses**

    **a.**    This provision applies if:
          (1) The Covered Cause of Loss results from a defect in design, material, manufacture, or construction; and
          (2) You have other "covered property" of the same type, design, material, manufacture, or construction.

3

> **b.** When this provision applies:
> (1) You agree promptly to examine such other "covered property" to determine if the same defect is present, inform us of the findings, and repair and, as far as practicable, eliminate the defect or replace defective parts;
> (2) We will not pay for your expenses to comply with (1) above.
> (3) As respects any other loss, damage or expense resulting from the same defect, we will not pay the full amount of the loss. Instead, our payment after applying the applicable deductible, will be calculated according to the following scale:
> > 80% of the second loss;
> > 60% of the third loss;
> > 40% of the fourth loss;
> > 20% of the fifth loss;
> > 0% of any subsequent losses.

[Filing No. 18 at 10.] The fire was caused by a defect in design, material, manufacture, or construction, and the defects at Buildings 87 and 129 were of the same type, design, material, manufacture, and construction as the defects at Building 98. [Filing No. 18 at 11.]

Immediately after the fire, HMV Indy I engaged BDO USA, LLP ("BDO") to calculate the amount of HMV Indy I's claim under the Policy. [Filing No. 18 at 8.] In June 2018, based on BDO's calculations, HMV Indy I demanded that HSB pay $2,116,861 as required by the Policy.[2] [Filing No. 18-2 at 1.] HSB made no payments until September 2018—seventeen months after the fire. [Filing No. 18 at 13.] And when HSB did make payments, it paid less than one-third of the amount demanded. [Filing No. 18 at 8.]

On March 21, 2019, HMV Indy I filed this lawsuit against HSB, and filed its Amended Complaint nineteen days later, alleging Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing. [Filing No. 18.] On May 10, 2019, HSB filed a Rule 12(b)(6) Motion to Dismiss

---

[2] BDO's professional fees amounted to $48,230. That amount, together with the property damages ($1,085,245) and business interruption losses ($983,386) equals the total $2,116,861 demanded by HMV Indy I. [Filing No. 18-2 at 5.]

HMV Indy I's Cause of Action for Breach of the Duty of Good Faith and Fair Dealing. [Filing No. 26.]

### III.
#### DISCUSSION

In its Motion to Dismiss, HSB argues that HMV Indy I's allegations are insufficient to state a facially plausible claim upon which relief could be granted. [Filing No. 27 at 2.] HSB argues that HMV Indy I pleads only conclusory allegations and threadbare recitations of the elements of a breach of the duty of good faith cause of action, and that HMV Indy I's claim rests "exclusively upon impermissible conclusory accusations and/or mere legal conclusions, unbacked by any facts or factual allegations whatsoever." [Filing No. 27 at 2.] Specifically, HSB contends that a mere denial of an insurance claim, without more, is insufficient to state a bad faith claim. [Filing No. 27 at 8.] According to HSB, HMV Indy I's "conclusory allegations of HSB's state of mind here are insufficient to establish the required subjective, conscious wrongdoing element of [HMV Indy I's] cause of action for 'Breach of the Duty of Good Faith and Fair Dealing.'" [Filing No. 27 at 10.] Therefore, according to HSB, "Plaintiff has no legally viable claim against HSB for bad faith." [Filing No. 27 at 10.] HSB also argues that to the extent there was any delay in payments to HMV Indy I, the alleged facts also show that HSB did not cause the delay. [Filing No. 27 at 9.]

HMV Indy I responds in opposition that the Amended Complaint specifically identifies the "acts and failings of [HSB] that constitute 'making an unfounded refusal to pay policy proceeds' and/or 'causing an unfounded delay in making payment' constituting bad faith." [Filing No. 29 at 2.] HMV Indy I argues that the Amended Complaint precisely identifies specific losses for which HSB refuses to pay, [Filing No. 29 at 21]; identifies the Policy provisions that afford coverage for such losses, [Filing No. 29 at 22-24]; and alleges that HSB was without a rational, principled basis for refusing to cover those losses, [Filing No. 29 at 22-24]. HMV Indy I also argues that HSB

5

conceded that it owed money to HMV Indy I, and that the failure to pay until months after the demand—and seventeen months after the loss—was a "conscious decision to drag its feet in making *any* payment to HMV Indy I." [Filing No. 29 at 20 (emphasis in original)]. According to HMV Indy I, the facts in the Amended Complaint demonstrate "an unfounded delay in making payment constituting bad faith" as required under post-*Twombly* and *Iqbal* cases. [Filing No. 29 at 19 (internal quotations omitted).]

In reply, HSB argues that despite HMV Indy I's assertions, HMV Indy I's opposition arguments are based on out-of-date pleading standards and that HMV Indy I's "bad faith claim is not facially plausible under *Twombly* and *Iqbal* because the claim is not premised on factual content" that would allow the Court to draw the inference that HSB may be liable for a breach of its duty of good faith. [Filing No. 31 at 11.] HSB contends that, under post-*Twombly* and *Iqbal* case law, allegations like HMV Indy I's have been held insufficient and therefore HMV Indy I's allegations are also inadequate. [Filing No. 31 at 13-14.]

Under Indiana law,[3] implied in all insurance contracts is the duty of an insurer to deal with its insured in good faith. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). Although the scope of the duty of good faith is not precisely defined, the Indiana Supreme Court has specifically recognized four grounds for a finding of a breach of the duty of good faith: "(1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment;

---

[3] "Federal courts sitting in diversity cases such as this apply the Federal Rules of Civil Procedure in procedural matters and the state substantive law that applies to the cause of action." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 754 (7th Cir. 2004). Because Indiana is the forum state and the parties do not suggest that any law other than Indiana's applies, it governs this Motion to Dismiss. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("default rule [is] that the law of the forum applies when neither party suggests otherwise").

6

(3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into settlement of his claim." *Id.* at 519.

A claim of bad faith based on a denial of coverage or refusal to pay exists when the insurer denies a claim despite knowing it lacks a rational, principled basis for doing so. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). But such a claim does not necessarily arise every time an insurance claim is denied or not resolved to the insured's liking, even if the denial is erroneous. *Erie Ins. Co.*, 322 N.E.2d at 520. In other words, "[p]oor judgment or negligence do not amount to bad faith;" a finding of bad faith requires a "state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Colley v. Ind. Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998).

HMV Indy I's Amended Complaint alleges that HSB knowingly and in bad faith denied coverage, delayed making payment, and refused to pay amounts due and owing to HMV Indy I under the Policy for covered losses stemming from the fire. [Filing No. 18 at 13.] HMV Indy I sets forth several factual allegations to support this claim, and it contends HSB acted unreasonably in multiple respects. Among the unreasonable acts HMV Indy I alleges are: failing to make payments under the Policy until seventeen months after HMV Indy I notified HSB of the fire, [Filing No. 18 at 13]; to the extent payments were eventually made, refusing to pay two-thirds of the amount of covered losses, [Filing No. 18 at 8]; acknowledging that the Policy "'will afford coverage' for the damage to HMV Indy I's covered property and associated business income loss during the 'Period of Restoration,'" but subsequently refusing to pay a portion of losses that arose during that period, [Filing No. 18 at 7; Filing No. 18 at 9]; denying that HMV Indy I has an insurable interest in the building because HMV Indy I does not own the building, despite the Policy

providing otherwise, [Filing No. 18-2 at 2]; and denying that Building 98 is "covered property" under the Policy because HMV Indy I does not have an insurable interest, [Filing No. 18-2 at 2].

HMV Indy I contends that it has a bad faith claim by alleging that HSB knowingly and in bad faith refused to pay amounts due and owing to HMV Indy I under the Policy for covered losses stemming from the fire, and delayed making those payments which were made. [Filing No. 29 at 2.] The Court will consider each of these theories in turn.

*A. Unfounded Refusal to Make Payments*

In its Motion to Dismiss, HSB argues that the above-summarized allegations are insufficient to state a claim upon which relief could be granted that is plausible on its face. [Filing No. 27 at 2.] Specifically, HSB argues that HMV Indy I's allegations of HSB's state of mind here are conclusory and fail to establish the required subjective, conscious wrongdoing element of a bad faith claim. [Filing No. 27 at 10.] Though HSB may be correct that under Indiana law, an insurance company has a right to be wrong without being exposed to liability for bad faith, the insurance company may not be wrong and also lack a rational, principled basis for its decision. *Freidline*, 774 N.E. 2d at 40. In other words, it is the insurance company's knowledge that it lacks a rational, principled basis for its denial that gives rise to a bad faith claim, not whether its decision was ultimately right or wrong. HMV Indy I alleges that HSB acknowledged a covered cause of loss had occurred and acknowledged that the Policy affords coverage for the damage. [Filing No. 18 at 7.] HMV Indy I further alleges that HSB knew it did not have any reasonable justification for its refusal to make payments. [Filing No. 18 at 13]. Taking these allegations as true—as the Court must do at this stage—HMV Indy I pleads facts that could state a plausible claim upon which relief could be granted.

And despite HSB's argument that the Amended Complaint is "devoid of factual allegations explaining how or when HSB . . . denied coverage and/or refused to pay knowingly and without justification," [Filing No. 27 at 11], HMV Indy I is not required to plead malice, intent, or knowledge with particularity. Fed. R. Civ. P. 9(b). To require HMV Indy I to plead facts that establish *why* there existed no rational, principled basis for refusal and *how* HSB knew it had no basis would impose a heightened pleading standard on HMV Indy I that is simply not required in this context. *Skinner v. Metro. Life Ins. Co.*, 829 F.Supp.2d 669, 678 (N.D. Ind. 2010) (requiring a plaintiff to make specific allegations of bad faith and to plead the proper state of mind in the complaint would be tantamount to applying a heightened fact or pleading standard (discussing *Sanyo Laser Prods. v. Royal Ins. Co. of Am.*, 2003 WL 23101793 (S.D. Ind. 2003))). HMV Indy I alleges how it suffered its losses, the amount of those losses, what Policy provisions covered those losses, when it submitted a claim, and the reasons HSB provided for HSB's refusal to pay under the Policy. *But cf. H.E. McGonigal, Inc. v. Harleysville Lake States Ins. Co.*, 2016 WL 4541433, at *3 (S.D. Ind. Aug. 31, 2016) (holding that the Plaintiff's complaint failed as it did *not* allege any of the above referenced facts). It is enough that HMV Indy I alleges facts, taken as true, that show which losses were not paid, the reasons HSB offered for its refusal to pay, and that HSB knew those reasons were unreasonable and without a rational basis. As such, HMV Indy I has sufficiently stated a claim under this theory.

*B. Unfounded Delay*

Additionally, HMV Indy I sets forth sufficient factual allegations for a claim of bad faith based on an unfounded delay in making payment, which is plausible on its face. HMV Indy I alleges that it informed HSB of the fire and "tendered its claim for coverage" for losses either one

9

or two days[4] after the fire, but HSB "took more than 17 months from the date of the covered loss to pay HMV Indy I amounts that HSB conceded it owed to HMV Indy I under the policy." [Filing No. 18 at 7; Filing No. 18 at 13.] HSB responds that it did not receive a demand for a specific amount for 14 months. [Filing No. 27 at 9.] In other words, HSB argues that after it received a claim for an amount certain, it took only 3 months for HSB to pay.

Though the Court notes that it may well be true that HSB did not cause an unfounded delay under the circumstances and therefore did not breach its duty of good faith, such an argument is unpersuasive at this stage. In its Amended Complaint, HMV Indy I alleges facts that give rise to a plausible claim that HSB caused an unfounded delay in making payment by taking more than 17 months from the date it was notified of the covered loss to make payments to HMV Indy I. That it may also be plausible—and as HSB suggests, perhaps even more likely[5]—that HSB did not cause an unfounded delay is of no consequence here. To the extent HSB is arguing that the amount of time between the fire and payment was not an unfounded delay, or that HMV Indy I caused the delay, HSB is arguing that the Court should find its argument more persuasive than HMV Indy I's also-plausible claim. While this argument may be appropriate at if the evidence is undisputed at summary judgment or at trial, it is enough at this stage that HMV Indy I's allegations allow the Court to draw the reasonable inference that HSB caused an unfounded delay. *See Active Disposal*

---

[4] The exact date on which HMV Indy I notified HSB is unclear from the pleadings. (The Amended Complaint states in ¶ 12 that the fire occurred on April 24. In ¶ 20, HMV Indy I states "[o]n April 26, 2017, the day after the fire on Building 98" HMV Indy I notified HSB of the fire.). However, for purposes of this motion, the exact date is unimportant.

[5] "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

*Inc.*, 635 F.3d at 886. HSB's attempts to persuade the Court to ignore the appropriate standard of review are for naught.

Under either the unfounded refusal to pay theory or the unfounded delay in making payment theory, the Court finds that HMV Indy I has pled sufficient factual allegations to state a claim for breach of the duty of good faith and fair dealing.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** HSB's Motion to Dismiss HMV Indy I's claim for Breach of the Duty of Good Faith and Fair Dealing [26].

Date: 9/4/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**